UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

|  |  |
|---|---|
| AMELIA DAVIS LESTER, | |
| **Plaintiff,** | |
| | No. 3:12-cv-299 |
| **vs.** | (Campbell/Guyton) |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | |
| **Defendant.** | |

## ORDER

Plaintiff Amelia Davis Lester's house was insured by a homeowner's policy issued by Defendant Allstate Property & Casualty Insurance Company. In March 2012, a fire damaged the house and Ms. Lester and her husband, Brandon Lester,[1] filed a claim with Allstate. The Lesters refused to submit to examinations under oath unless and until Allstate produced its investigation file to the Lesters. Allstate contended that it was not required to do so. It further stated that Ms. Lester, by refusing to provide a statement under oath, had breached the duty to cooperate under the Policy, and that such failure to cooperate would result in denial of benefits. Ms. Lester then filed this declaratory judgment action, and Allstate filed a mirror-image counterclaim against Ms. Lester.

_____

[1]Mr. Lester is neither a party to this lawsuit nor an insured.

The matter is now before the court on Allstate's motion for summary judgment and Ms. Lester's motion to dismiss the counterclaim. For the reasons set forth below, the court GRANTS Allstate's motion and DENIES Ms. Lester's motion.

## FACTUAL BACKGROUND

On March 11, 2012, a fire damaged Amelia and Brandon Lester's house. On March 12, 2012, Ms. Lester filed an insurance claim with Allstate Property and Casualty Company, the issuer of the homeowner's insurance policy.

After Allstate property adjusters conducted an initial investigation, Allstate turned the claim over to Richard Read, a Staff Claim Service Adjuster for Allstate, who continued the investigation. After Mr. Read conducted his preliminary investigation, he retained an attorney on Allstate's behalf to assist him with further investigation. In particular, he hired the attorney for the purpose of taking an examination under oath (EUO) of both Ms. Lester and her husband Brandon Lester.

On April 20, 2012, Allstate's attorney wrote to the Lesters to begin the process. In the April 20th letter, he cited to the Policy's Section 1, titled "Conditions." In that section's third part (titled "What You Must Do After A Loss"), the Policy sets forth the insured's duties and includes the following relevant language:

> In the event of a loss to any property that may be covered by this policy, you must: ... as often as we reasonably require: ... at our request, <u>submit to examinations under oath</u>, separately and apart from any other person defined as you or the insured person and sign a transcript of the same. ...

> <u>We have no duty to provide coverage</u> ... if you,[2] an insured person, or a representative of either <u>fail to comply</u> with [the] items ... above, <u>and this failure to comply is prejudicial to us</u>.

(Policy ¶ 3(f)(2) (emphasis added) (attached as Ex. 6 to Aff. of Richard Read (Docket No. 6-1).) In the letter, Allstate requested production of specific documents and arranged for examinations under oath (EUOs) for both Amelia and Brandon Lester. The letter, addressed to the Lesters' attorney, scheduled the EUOs for May 1, 2012.

Through a miscommunication, the Lesters did not attend the scheduled EUOs. Soon after May 1, 2012, Allstate's attorney received a letter from the Lesters' attorney, who explained their absence on May 1, 2012, requested a new date and time for the EUOs, and requested "a copy of any statements that [Allstate had] obtained of Ms. Amelia Davis Lester . . . [as well as] copies of your investigation file in reference to this matter so that we can [be] brought up to date as to the status of this claim." (Apr. 27, 2012 Letter from Dunaway to Allstate (Ex. 2 to Read Aff.).)

On May 8, 2012, Allstate's attorney sent a letter requesting a re-scheduling of the EUOs and noting that they would be conducting an EUO not only of Ms. Lester but also of Mr. Lester, who "is a resident of the household and is subject to examination" under the Policy. (May 8, 2012 Letter from Hogue to Dunaway (Ex. 3 to Read Aff.).) Allstate's attorney also responded that "Allstate's file material and the statement of Mrs. Lester are not subject to disclosure." (<u>Id.</u>)

In a May 10, 2012 letter, the Lesters' attorney questioned Allstate's conclusion that Mr. Lester was subject to examination, but nevertheless said that, "in a spirit of communication, and

---

[2]The Policy defines "you" and "your" as "the person listed under the Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse." (Policy at p. 4.) Brandon Lester is the insured's "resident spouse."

3

provided that the investigative material and Ms. [Lester's] statement are provided to us well in advance, <u>we will allow Mr. [and Mrs.] Lester to participate in a statement under oath, provided we receive this information for their information and review</u>." (May 10, 2012 Letter from Dunaway to Hogue at 1 (Ex. 4 to Read Aff.) (emphasis added).)  The Lesters' attorney contended that the documents must be disclosed as part of Allstate's "good faith and fair dealing" obligation under the Policy.  He did not cite to any language in the Policy, mostly likely because the Policy does not contain any language requiring Allstate to provide that material to the insured under any circumstances.  He then said that, "<u>Upon receipt of this information</u>, I will be happy to schedule a statement under oath to be conducted at our office."  (<u>Id.</u> at 2 (emphasis added).)

On May 23, 2012, Allstate's attorney, after receiving the May 10 letter and speaking with another of the Lesters' attorneys, wrote that "I understand your position to be that you are refusing to make your clients available for examinations under oath until Allstate provides you with its investigation file." (May 23, 2012 Letter from Hogue to Dunaway and Kherani at 1 (Ex. 5 to Read Aff.).)  He disputed the notion that the insured was entitled to the investigation file, saying that:

> the investigation is still ongoing.  For this reason, the release of the investigation material could jeopardize the integrity of the same. . . .  While we acknowledge a duty of good faith and fair dealing, we do not agree that this requires disclosure of information obtained during Allstate's investigation. . . . If your clients decline to submit to examinations under oath, they will have failed to comply with the policy conditions.  **A failure to submit to examinations under oath will result in denial of their claims.**

(<u>Id.</u> (emphasis in original).)  He then told the Lesters' attorney to

> contact me with[in] **10 days** from the date of this letter to schedule the examinations under oath of Brandon and Amelia Lester.  <u>If I do not hear from you with[in] 10 days, I will assume that your clients continue to refuse to submit</u>

4

examinations under oath and I will report to Allstate accordingly.

(Id. at 1-2 (emphasis added).)

The Lesters did not respond to Allstate's request to schedule the EUOs. Instead, eight days later, Ms. Lester filed a declaratory judgment action on May 31, 2012, against Allstate. Allstate filed a counterclaim. No EUOs were ever conducted.[3]

## ANALYSIS [4]

Amelia Lester seeks a declaratory judgment that Allstate is obligated to pay the claim and that its refusal to provide the investigative file was a breach of the good faith and fair dealing obligation under the Policy. Allstate, in its counterclaim, seeks a declaratory judgment that Ms. Lester's and her husband's refusal to submit to an EUO was a failure to satisfy a condition precedent that voided any obligation Allstate may have had to pay insurance benefits under the

---

[3]According to Ms. Lester, it was Allstate's fault that an EUO was never rescheduled. She says, in her brief, that "apart from the May 1, 2012 EUO for which Ms. Lester through her counsel had communicated in advance her inability to attend [that message was sent to Allstate directly, so the attorney did not get the message until after May 1], no specific date for an EUO was ever set; nor did Ms. Lester ever fail to attend any actually scheduled proceeding." (Pl.'s Mem. Opp'n (Docket No. 9) at 4.)

[4]Allstate filed a motion for summary judgment, and Ms. Lester filed a motion to dismiss. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the factual evidence and draw reasonable inferences in favor of the non-moving party." National Enters., Inc. v. Smith, 114 F.3d 561, 563 (6th Cir. 1997) (citing Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC, 700 F.3d 829, 835 (6th Cir.2012). Because no genuine dispute of a material fact exists, the court faces a legal question. Accordingly the substance of the standard of review is the same regardless of whether the court is considering the issues under Rule 56 or Rule 12(b)(6).

5

Policy.

## 1.    The Implied Covenant of Good Faith and Fair Dealing.

Ms. Lester alleges that Allstate breached its duty of good faith and fair dealing under the Policy by refusing to provide a copy of its investigative file and, ultimately, refusing to pay Ms. Lester's claim of loss.

Tennessee law recognizes an implied covenant of good faith and fair dealing in the performance and enforcement of every contract. Dick Broad. Co., Inc. of Tennessee v. Oak Ridge FM, Inc., 395 S.W.3d 653, 660 (Tenn. 2013); Lamar Adver. Co. v. By-Pass Partners, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009). "The purpose of this implied covenant is (1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered." Lamar, 313 S.W.3d at 791. But the implied obligation does not create new contractual rights or obligations, and it may not be used to circumvent or change the terms of the parties' agreement. Id. (citing Barnes & Robinson Co. v. One Source Facility Servs., Inc., 195 S.W.3d 637, 642-43 (Tenn. Ct. App. 2006); Goot v. Metro. Gov't of Nashville & Davidson County, No. M2004-02013-COA-R3-CV, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005)).

Ms. Lester argues that she is not seeking to alter the Policy language. (See Pl.'s Mem. Opp'n at 11.) But by insisting that Allstate has an affirmative obligation to give her a copy of the investigative file before any EUO occurs, she is doing just that. There is no language in the Policy imposing such an obligation on Allstate.

For the foregoing reasons, the court holds that Allstate did not violate the covenant of good faith and fair dealing implied in the Policy.

6

## 2.    The Insured's Duty to Sit for an Examination Under Oath After a Loss Occurs

The portion of the Policy entitled "Conditions" (Section 1 of the Policy) is a cooperation clause that obligates the insured to cooperate with the insurer when a claim is being investigated. Like many other insurance policies, the Policy here contains a cooperation clause that imposes a duty on the insured (Amelia Lester) to sit for an EUO in the event the insurer (Allstate) requests one.  In the Policy section titled "Conditions," the third part (titled "What You Must Do After A Loss") of that section sets forth the insured's duties, including the following:

> In the event of a loss to any property that may be covered by this policy, <u>you must</u>: ... as often as we reasonably require: ... <u>at our request, submit to examinations under oath</u>, separately and apart from any other person defined as you or the insured person and sign a transcript of the same.

(Policy ¶ 3(f)(2) (emphasis added) (attached as Ex. 6 to Aff. of Richard Read (Docket No. 6-1).)

The court finds the Policy language at issue to be clear and unambiguous.

Under Tennessee law,

> [t]he reason for a cooperation clause in the policy and for conducting examinations pursuant to it is obvious enough.  The company is entitled to obtain, promptly and while the information is still fresh, "all knowledge and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims . . . ."

<u>Shelter Ins. Cos. v. Spence</u>, 656 S.W.2d 36, 38 (Tenn. Ct. App. 1983) (quoting <u>Claflin v. Commonwealth Ins. Co.</u>, 110 U.S. 81, 94-95 (1884)).  In a relatively recent Tennessee court decision, <u>Spears v. Tennessee Farmers Mut. Ins. Co.</u>, 300 S.W.3d 671 (Tenn. Ct. App. 2009), a similarly-worded cooperation clause was at issue.  The <u>Spears</u> court noted that the insurer's "decision to seek an examination under oath was discretionary; however, once [the insurer] made such a request, [the insured] was under an obligation to answer questions under oath posed by an

7

agent of [the insurer]." Id. at 681. Allstate exercised its discretion to require an EUO. That triggered Ms. Lester's duty under Paragraph 3(f)(2).

The EUO is a condition precedent in the Policy, meaning that failure of the insured to fulfill a duty excuses the insurer from its obligation to pay the claim. See Spears v. Tennessee Farmers Mut. Ins. Co., 300 S.W.3d 671, 681 (Tenn. Ct. App. 2009) ("[S]ubmission to answer questions under oath when requested as provided for in the insurance policy at issue is a condition precedent to an insured's recovery under that policy."); Shelter Ins. Co. v. Spence, 656 S.W.2d 36, 38 (Tenn. Ct. App. 1983) ("Fire policies such as the one in question almost universally require that the insured cooperate with the insurer in the investigation of the fire as a condition precedent to performance by the company to indemnify the insured for his loss."); Talley v. State Farm Fire & Cas. Co., 223 F.3d 323 (6th Cir. 2000) (applying Tennessee law, and stating that "Tennessee courts view these clauses as conditions precedent and . . . hold that a breach of the clause substantially affecting the insurer's interests constitutes a complete defense to liability under the policy.") (emphasis added)). The Policy specifically incorporates this:

> We have no duty to provide coverage ... if you, an insured person, or a representative of either fail to comply with [the] items [including the EUO requirement]... above, and this failure to comply is prejudicial to us.

(Policy ¶ 3(f)(2) (emphasis added).) Allstate's request for an EUO, followed by Ms. Lester's refusal to submit to an EUO, supports Allstate's defense to liability.

Ms. Lester contends that she "did not, in fact, fail 'to comply with policy conditions.'" (Pl.'s Mem. Opp'n at 8 (Docket No. 9).) She reasons that, "apart from the plaintiff's failure to attend the May 1, 2012 EUO, of which Allstate had advance notice and for which the unavailability of Mrs. Lester's counsel is a perfectly reasonable excuse, there was never an EUO

8

either scheduled or convened at which the plaintiff failed to show up." (Id.)  In essence, she says that she is excused from that Policy condition.  Her argument is unpersuasive.  Ms. Lester had notice of Allstate's request.  She also admitted that she would not submit to an EUO unless Allstate provided its investigative file to her in advance of any EUO.  She cannot now claim that she is excused from providing an EUO because it was never scheduled.

It is true, as Ms. Lester points out, that the element of prejudice to the insurer does play a role in the court's analysis.  But contrary to Ms. Lester's contention, the burden to show prejudice does not fall on the insurer.  Rather, under Tennessee law, the insured's failure to perform a duty under an insurance policy gives rise to a rebuttable presumption that the insurance company has been prejudiced.  See Alcazar v. Hayes, 982 S.W.2d 845, 856 (Tenn. 1998) (holding that a rebuttable presumption of prejudice arises when the insured provides late notice under an uninsured motorist policy); American Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 818 (Tenn. 2000) (extending the rebuttable presumption in Alcazar to breach of notice provision in a general liability insurance policy).  The court finds it significant that the Sixth Circuit, applying Tennessee law, held that "it would logically follow, in light of Alcazar and Hutchison, that a showing of prejudice is required before an insurance provider is permitted to defeat liability in the context of a fire insurance policy claim" and that an insured's "refusal to submit to a sworn examination" creates a "presumption that [the insurance company] was prejudiced by [such] failure to cooperate by submitting to an examination under oath." Talley, 223 F.3d at 327 (emphasis added).  The same principles apply in this case.

Of course, the nature of a "rebuttable presumption" means that the insured can rebut the presumption of prejudice by presenting "competent evidence," id. at 328, but Ms. Lester has not

9

done so here.  She relies on an inaccurate reading of the law to demand that Allstate show

prejudice.[5]  Then she points to the absence of concrete evidence from Allstate concerning

prejudice.[6]  But it is she who must present evidence.  She has not met her burden.  Accordingly,

the court finds that the rebuttable presumption of prejudice had not been rebutted and Allstate is

entitled to summary judgment.

## CONCLUSION

Allstate undisputedly requested an EUO and provided opportunities for the Lesters to

schedule one.  Allstate's behavior was reasonable.  Allstate's request gave rise to a duty on the

part of the Lesters to be questioned by an Allstate representative and answer questions while

under oath.  The Lesters, through their attorney, refused to do so, despite the warning Allstate

gave to them about the consequences.  The Lesters, who had the opportunity and time to schedule

a different EUO date, did not provide suggestions for new times.  Instead, they offered no

alternative dates, and they conditioned their appearance on an improper demand for the

investigative file.  Then, despite being fully informed of the consequences of failing to submit to

---

[5]Ms. Lester misstates the relevant law concerning prejudice.  In her opposition brief she claims that "Allstate must also show that it was prejudiced by [her] alleged refusal" to appear for an EUO.  (Mem. Opp'n at 12 (emphasis added).)  To support that proposition, she cites to cases interpreting Louisiana state law.  (See id. at 13.)  She does not cite to any Tennessee authority, nor could she, because no such cases exist.  In fact, as the court discusses, Tennessee law requires the opposite (that is, the insured bears the burden of showing that the insurer did not suffer prejudice).

[6]Arguably, the nature of the cooperation clause and the purpose behind EUOs, as articulated by the courts, inherently suggests prejudice to the insurer.  Some peripheral mention of this prejudice exists in paragraph 13 of Mr. Read's affidavit and in counsel's unsworn statement in a reply brief that "Allstate has obtained information about Plaintiff's fire loss that warrants further investigation.  If Allstate cannot examine the Plaintiff, it cannot determine whether its conclusions reached during the preliminary investigation require further investigation, or make a determination as to coverage."  (Def.'s Reply at 5 (Docket No. 13).)

10

an EUO, they filed this declaratory judgment action. Because Ms. Lester has failed to rebut the presumption that Allstate was prejudiced, the failure to unconditionally submit to an EUO bars her insurance claim against Allstate.

Accordingly, Ms. Lester's Motion to Dismiss (Docket No. 11) is DENIED, and Allstate's Motion for Summary Judgment (Docket No. 6) is GRANTED.

SO ORDERED this 18th day of July, 2013.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

11